**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Albert Brogdon, Jr., ) | No. CV 11-1389-PHX-RCB (MEA) |
| ) | |
| Plaintiff, ) | **O R D E R** |
| ) | |
| vs. ) | |
| ) | |
| Phoenix Police Department, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff George Albert Brogdon, Jr. brought this pro se civil rights action under 42 U.S.C. § 1983 against the City of Phoenix and City of Phoenix Police Officers Eric Boardman and Mylen Lubker for alleged Fourth Amendment violations (Doc. 14). Before the Court is Defendants' Motion for Summary Judgment (Doc. 51), which Plaintiff opposes (Doc. 54).

The Court will grant Defendants' motion in part and deny it in part.

**I.   Background**

Plaintiff's claims arose on September 21, 2010 in Phoenix, Arizona (Doc. 14). In Count I of his First Amended Complaint, Plaintiff alleged that Boardman and Lubker illegally seized and detained him when they stopped him for a traffic violation involving his bicycle (id. at 3). Plaintiff averred that Defendant officers stopped him but then left the scene to respond to a priority call (id.). Plaintiff stated that Defendant officers then found Plaintiff

1    again, stopped him and asked for his identification, illegally searched his property, arrested
2    him for marijuana possession, and booked him into the county jail (id.).  Plaintiff also stated
3    that Defendant officers did not give him Miranda warnings (id., ref. to Miranda v. Arizona,
4    384 U.S. 436 (1966)).  According to Plaintiff, in his criminal case, the evidence was
5    suppressed and the criminal charges were dismissed (id., citing Case No. CR 2010-151332).
6       In Count II, Plaintiff claimed that the City of Phoenix failed to properly train its
7    officers and that failure to train led to the violations alleged in Count I (id. at 4).  He further
8    claimed that as a result of the City's failure to train, the Defendant officers failed to read
9    Plaintiff his Miranda rights before they questioned him and he was therefore unaware of his
10   rights when Boardman asked him if he had anything illegal on his person (id.).
11      Defendants now move for summary judgment on the grounds that (1) Boardman and
12   Lubker had reasonable suspicion to stop and detain Plaintiff, (2) Boardman's questions did
13   not require Miranda warnings or implicate the Fourth Amendment, (3) Boardman and Lubker
14   had probable cause to search and arrest Plaintiff, and (4) Plaintiff cannot support a Monell
15   claim against the City of Phoenix (Doc. 51, ref. to Monell v. Dep't of Social Servs., 436 U.S.
16   658, 691 (1978)).

17   **II.   Summary Judgment Standard**

18      A court must grant summary judgment "if the movant shows that there is no genuine
19   dispute as to any material fact and the movant is entitled to judgment as a matter of law."
20   Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The
21   movant bears the initial responsibility of presenting the basis for its motion and identifying
22   those portions of the record, together with affidavits, that it believes demonstrate the absence
23   of a genuine issue of material fact.  Celotex, 477 U.S. at 323.
24      If the movant fails to carry its initial burden of production, the nonmovant need not
25   produce anything.  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099,
26   1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden then
27   shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in
28

1 contention is material, i.e., a fact that might affect the outcome of the suit under the
2 governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury
3 could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
4 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir.
5 1995). The nonmovant need not establish a material issue of fact conclusively in its favor,
6 First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must
7 "come forward with specific facts showing that there is a genuine issue for trial." Matsushita
8 Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation
9 omitted); see Fed. R. Civ. P. 56(c)(1).

10 At summary judgment, the judge's function is not to weigh the evidence and
11 determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477
12 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all
13 inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited
14 materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

15 **III.  Facts**

16 With their motion, Defendants submit a separate Statement of Facts (DSOF), which
17 is supported by Boardman's and Lubker's affidavits (Doc. 52, Attachs.). Defendants set
18 forth the following factual assertions:

19 On September 21, 2010, at approximately 11:24 p.m, Boardman and Lubker were
20 patrolling the area around 27th Avenue and Bethany Home Road in a marked patrol vehicle
21 (DSOF ¶ 1). They observed Plaintiff riding a bicycle eastbound on the north sidewalk; they
22 noted that Plaintiff's bicycle did not have a front white light as required under Arizona
23 Revised Statute § 28-817(A) (id. ¶ 2). Boardman and Lubker pulled up next to Plaintiff, who
24 was now not riding the bicycle but sitting on it (id. ¶ 3). Boardman had Plaintiff get off the
25 bicycle, and he asked Plaintiff to take off his backpack and place it to the side for safety
26 reasons (id. ¶ 4). Boardman asked Plaintiff for his identification and then handed it to
27 Lubker so he could run the information in the patrol vehicle (id. ¶ 5). When Lubker got to
28 the vehicle, he received a priority call and returned to tell Boardman that they had to respond

1  to a hot call (id. ¶ 6). Boardman gave Plaintiff his backpack and identification, and the
2  officers left to respond to the priority call without issuing Plaintiff a citation for a violation
3  of § 28-817(A) (id. ¶ 7).

4  After responding to the priority call, the officers drove down Bethany Home Road and
5  observed Plaintiff walking his bicycle eastbound on the north sidewalk (id. ¶ 8). They
6  stopped Plaintiff at 11:36 p.m. to issue him a citation for violation of § 28-817(A) (id. ¶ 9).
7  Boardman again had Plaintiff set his backpack to the side, and he asked for Plaintiff's
8  identification and gave it to Lubker to run from the vehicle (id. ¶ 10). Boardman asked
9  Plaintiff if he had anything illegal on him, and Plaintiff responded that he had marijuana in
10 his backpack and pointed to the side pocket (id. ¶ 11). Boardman located the marijuana, and
11 he and Lubker then arrested Plaintiff (id. ¶ 12). Lubker searched the rest of Plaintiff's
12 backpack and found a metal pipe with marijuana residue (id.).

13 Plaintiff was ultimately transported to the Fourth Avenue Jail and charged with one
14 count of possession of marijuana and one count of drug paraphernalia (id. ¶ 13). Before
15 transport to the jail, Boardman served Plaintiff with the civil traffic citation for violation of
16 § 28-817(A) (id. ¶ 14). Plaintiff did not appear for court on this citation (id. ¶ 14).

17 Plaintiff did not submit a separate statement of facts. In his response, he does not
18 dispute any of Defendants' factual assertions except for their claim that Plaintiff was riding
19 or sitting on his bike when they first approached him (Doc. 54 at 1-2). Plaintiff states that
20 he was not riding his bicycle when he was first stopped; rather, was walking his bicycle (id.).
21 He also submits evidence showing that the possession and drug paraphernalia counts were
22 later dismissed on the State's motion (id., Attach.).

23 **IV.  Arguments**
24     **A.  Defendants' Motion**

25 Defendants point to that portion of Plaintiff's First Amended Complaint alleging that
26 Defendant officers "lacked independent reasonable suspicion to stop [him] again after the
27 conclusion of the original traffic stop" (Doc. 51 at 4). Relying on this allegation, Defendants
28 state that Plaintiff concedes that the first stop was reasonable and the only challenge is to the

- 4 -

second stop (id.). Defendants assert that their initial stop of Plaintiff was for a violation of § 28-817(A) and was therefore reasonable (id.). Defendants further assert that after the stop was interrupted by a priority call, they had authority under state law to stop Plaintiff again and complete the initial investigation and issue him a citation (id. at 5, citing Ariz. Rev. Stat. § 28-1594).[1] According to Defendants, the fact that Plaintiff was not riding his bike at the time of the second stop is inconsequential because they saw him riding his bike without a white light just 12 minutes earlier and thus knew he had already committed a traffic violation (id. at 5-6). They contend that these circumstances rendered the stop reasonable under Terry v. Ohio, 392 U.S. 1, and its progeny (id.).

Defendants next argue that they did not violate Plaintiff's rights when they failed to given him Miranda warnings prior to asking him whether he had anything illegal on him (id. at 6). Defendants state that Miranda safeguards do not apply until a person's freedom of action is curtailed to a "degree associated with formal arrest" (id., citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984)). They assert that a person temporarily detained pursuant to an ordinary traffic stop and asked a modest number of questions is not "in custody" for purposes of Miranda (id.). Defendants argue that Boardman's questions to Plaintiff were general in nature and did not constitute an unlawful seizure because Plaintiff was not under arrest at that time and could have declined to answer the questions (id. at 7).

Defendants proceed to argue that Plaintiff's admission that he had marijuana in his backpack provided the necessary probable cause to search his backpack and the discovery of marijuana was probable cause to arrest Plaintiff for possession (id. at 8-9).

Finally, Defendants argue that Plaintiff cannot demonstrate a Monell claim against the City because he has not alleged any specific facts concerning a particular policy, practice, or custom surrounding the alleged constitutional violations (id. at 9). They also argue that Plaintiff cannot support a failure-to-train claim because he has not shown that the Defendant

---

[1]Arizona Revised Statute § 28-1594 states that a police officer "may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of this title and to serve a copy of the traffic complaint for an alleged civil or criminal violation of this title."

- 5 -

1    officers violated his constitutional rights, that their conduct or the City's conduct was
2    deliberately indifferent, or that his "injury" would have been avoided if the officers had been
3    trained adequately (id. at 10).

### B.    Plaintiff's Response[2]

Plaintiff states that he was not riding his bicycle when he was first stopped (Doc. 54 at 2). He further states that he was walking his bicycle when Defendant officers stopped him a second time; thus, there was no basis for and no reasonable suspicion to support the second traffic stop (id. at 5-6). Plaintiff relies on Arizona case law holding that after a lawful traffic stop is concluded, officers must have reasonable cause to initiate a second detention (id. at 4, citing State v. Sweeny, 227 P.3d 868, 870 (Ariz. Ct. App. 2010)).

Plaintiff argues that, when viewing all the circumstances, the second stop constituted a seizure under the Fourth Amendment because Boardman's actions—taking his identification and setting his backpack to the side—led Plaintiff to believe that he was not free to leave (id. at 3-4).

In support of his opposition, Plaintiff proffers (1) a copy of the State's Motion to Dismiss the possession and paraphernalia charges on the ground that it cannot make a good faith argument the stop in the case was proper and (2) a copy of the police report for the incident (id., Attachs.).[3]

### C.    Defendants' Reply

In reply, Defendants argue that neither the first stop nor the second stop violated Plaintiff's constitutional rights (id. at 1). They reassert that when they first saw Plaintiff, he was riding his bicycle without a white light in violation of state law, and the second stop was proper because they had simply not completed their initial traffic stop and issued Plaintiff the

---

[2] The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion and the requirements under Federal Rule of Civil Procedure 56 (Doc. 53).

[3] Defendants assert that the police report contains hearsay and is inadmissible (Doc. 55 at 2). To the extent that Defendants object to this evidence, it is overruled as moot because the Court does not consider the police report in its analysis.

1 citation (id. at 3-4). For this reason, Defendants state that the case on which Plaintiff relies, 2 Sweeney, is not applicable because in Sweeney, the officer had completed the initial traffic 3 stop and issued the driver a warning (id. at 4).

4 Defendants maintain that asking for and checking a person's identification does not 5 turn a traffic stop into a seizure under the Fourth Amendment (id. at 4-5). They reassert their 6 arguments that Plaintiff was not in custody for purposes of Miranda, Boardman's general 7 questions did not require Miranda warnings, Plaintiff's admission provided probable cause 8 to search the backpack, and the marijuana in the backpack provided probable cause to arrest 9 Plaintiff (id. at 5-6).

10 As to the claim against the City, Defendants state that Plaintiff did not dispute and 11 thus concedes that he has no Monell claim (id. at 7).[4]

12 **V.     Analysis**

13     **A.     Was There Reasonable Suspicion for the Traffic Stop?**

14 "An unlawful traffic stop may be the basis for a § 1983 action." Haynie v. Cnty. of 15 L.A., 339 F.3d 1071, 1075 (9th Cir. 2003). To be lawful under the Fourth Amendment, a 16 traffic stop must be supported by reasonable suspicion; that is, an officer must have "specific, 17 articulable facts which, together with objective and reasonable inferences, form the basis for 18 suspecting that the particular person detained is engaged in criminal activity." United States 19 v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (quoting United States v. Michael R., 20 90 F.3d 340, 346 (9th Cir. 1996)). The officer may use his training to draw inferences from 21 the facts he observes, but those inferences must be grounded in objective facts. Lopez-Soto, 22 205 F.3d at 1105. To determine whether reasonable suspicion exists, the court looks to the 23 "totality of the circumstances" in each case "to see whether the detaining officer has a 24 particularized and objective basis for suspecting legal wronging." See United States v. 25 Arvizu, 534 U.S. 266, 273 (2002) (citation omitted).

26 ―――――――――

27 [4]Defendants also argue that they are entitled to qualified immunity (Doc. 55 at 7-8). This argument was not presented in their motion, and the Court will not consider arguments 28 raised for the first time in a reply memorandum. Autotel v. Nev. Bell Tel. Co., 697 F.3d 846, 852 n. 3 (9th Cir. 2012).

Both Defendant officers aver that they observed Plaintiff riding a bicycle at night that did not have a white light on the front, in violation of § 28-817(A) (Doc. 52, Boardman Aff. ¶¶ 3-4; Lubker Aff. ¶¶ 3-4). Under § 28-817(A), "[a] bicycle that is used at nighttime shall have a lamp on the front that emits a white light visible from a distance of at least five hundred feet to the front . . . ." Based on this evidence, Defendant officers contend they had reasonable suspicion that Plaintiff was violating state law and the traffic stop was proper.

But in his response memorandum, Plaintiff avers that he was not riding his bicycle nor was he even sitting on his bicycle when Defendant officers first stopped him (Doc. 54 at 1-2). See Anderson, 477 U.S. at 255 (court must take as true Plaintiff's facts and evidence). If Plaintiff was not riding his bicycle, he was not "using" his bicycle in violation of the state statute, and, because Boardman and Lubker articulate no other basis for the traffic stop, there is a question of fact whether there was reasonable suspicion for the stop. Consequently, this single disputed fact between the parties is a material fact precluding summary judgment on Plaintiff's claim that the traffic stop violated his Fourth Amendment rights.

As mentioned, Defendants argue that based on a phrase in Plaintiff's amended pleading, he concedes that the original stop was reasonable (Doc. 51 at 4). But in light of Plaintiff's averments in the response memorandum that he was not riding his bicycle, the Court does not agree that Plaintiff conceded the reasonableness of the first stop. See Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008) (district court is required to afford a pro se plaintiff the "'benefit of any doubt' in ascertaining what claims he 'raised in this complaint and argued to the district court'") (internal quotation omitted); see also Erickson v. Pardus, 551 U.S. 89, (2007) (pro se petitioner may "bolster[ ] his claim by making more specific allegations . . . in later filings").

Defendants present the same justification for the second stop as for the original stop; namely, that they had previously observed Plaintiff riding his bicycle without a front light. This implicates that same disputed question of fact and creates a triable issue whether there was reasonable suspicion to stop Plaintiff the second time.

The Court finds that because a material factual dispute exists as to whether there was

1 reasonable suspicion for first or second stop, it need not address Defendants' argument that
2 the second stop was proper because they had not yet issued a citation and completed the first
3 stop (Doc. 55 at 4). Summary judgment will be denied to Defendant officers on this first
4 claim within Count I.

### B.     Did the Officer's Questions Require Miranda?

A traffic stop constitutes a "'seizure' within the meaning of [the Fourth] Amendment[t], even though the purpose of the stop is limited and the resulting detention quite brief." Berkemer, 468 U.S. at 436 (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)). But the Supreme Court has held that, given the noncoercive aspect of ordinary traffic stops, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Berkemer, 468 U.S. at 440. To determine whether an individual was "in custody" for Miranda purposes, a court must examine the "totality of the circumstances surrounding the interrogation" and consider five factors: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." United States v. Bassignani, 575 F.3d 879, 883-84 (9th Cir. 2009) (quoting United States v. Kim, 292 F.3d 969, 974 (2002)).

Questioning unrelated to the purposes of the traffic stop does not render the stop unlawful unless it prolongs the stop beyond what is necessary to effectuate its purposes. United State v. Mendez, 476 F.3d 1077, 1080 (2007). In Mendez, two Phoenix officers stopped a car because it did not appear to have a license plate or temporary registration tag. Id. at 1078. The officers had the driver get out of the car and sit on the curb while one officer took the driver's identification to the patrol car to conduct a records check. Id. During conversation with the officer while sitting on the curb, the driver stated that he had spent time in prison in Illinois, and the second officer overheard this as he returned from the patrol car. Id. at 79. The second officer then asked the driver what he was imprisoned for, and the driver stated he had been convicted of a weapons violation. Id. The officers then asked if

1  he had any weapons in the car, and the driver indicated that there was a firearm in the
2  driver's side door. Id. At this point, the officers arrested the driver and searched the car,
3  where they found a semi-automatic pistol. Id. The driver was charged with possessing a
4  firearm as a felon. Id. In affirming the district court's denial of the driver's motion to
5  suppress, the Ninth Circuit stated that although it previously held that during a traffic stop,
6  an officer may only ask questions reasonably related to the justification for the traffic stop,
7  the Supreme Court had since ruled that "'mere police questioning does not constitute a
8  seizure' unless it prolongs the detention of the individual, and thus, no reasonable suspicion
9  is required to justify questioning that does not prolong the stop." Id. at 1080 (citing Muehler
10 v. Mena, 544 U.S. 93, 101 (2005)).

11  Here, Boardman's question asking if Plaintiff had anything illegal on him was not
12 related to the reason for the traffic stop; however, this single question did not prolong the
13 stop, as Lubker was still checking Plaintiff's identification. Thus, under Muehler and
14 Mendez, no separate reasonable suspicion was necessary for the question. It follows that
15 Boardman's questioning did not transform the traffic stop into a situation where Plaintiff was
16 "in custody" and entitled to Miranda warnings. See Berkemer, 468 U.S. at 440. Although
17 Plaintiff's contact with Defendant officers was not voluntary, they did not confront Plaintiff
18 with any evidence of guilt related to drugs, the contact between the parties was on a public
19 street, the duration of the detention was very short, and there was no degree of pressure
20 applied to Plaintiff at any time. See Bassignani, 575 F.3d at 883-84.

21  Under the totality of the circumstances, Plaintiff was not in custody at the time he
22 answered Boardman's questions, and Defendant officers were not required to provide him
23 with Miranda warnings prior to the questioning. The Court will grant summary judgment to
24 Defendants on this portion of Plaintiff's claim in Count I.

25 //
26 //
27  **C.    Was There Probable Cause for Arrest and Search?**
28

- 10 -

The Fourth Amendment requires an officer to have probable cause to effect a warrantless arrest or to conduct a search. United States v. Brobst, 558 F.3d 982, 997 (9th Cir. 2009). "Probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." United States v. Noster, 590 F.3d 624, 629-30 (9th Cir. 2009).

There is no dispute that Plaintiff admitted to Defendant officers that he had marijuana in his backpack. Defendants cite numerous Ninth Circuit decisions holding that admissions of crimes or of the existence of contraband support probable cause for conducting a search (Doc. 51 at 8-9, citing cases). Accordingly, Plaintiff's admission provided Defendant officers probable cause to search his backpack, and their discovery of marijuana gave rise to probable cause for Plaintiff's arrest. See United States v. Hartz, 458 F.3d 1011, 1018 (9th Cir. 2006). Because Defendant officers had probable cause to arrest Plaintiff, the search of the rest of Plaintiff's backpack—which uncovered drug paraphernalia—was a constitutionally permissible search incident to arrest. See id. at 1019.

In short, Defendant officers had probable cause to arrest Plaintiff and search his backpack. Summary judgment will therefore be granted to Defendants on this claim within Count I.

**D.     Is City of Phoenix Liable Under Monell?**

The failure to train an officer who has caused a constitutional violation "can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officer] comes into contact." Long v. Cnty. of L.A., 442 F.3d 1178, 1186 (9th Cir. 2006); see City of Canton v. Harris, 489 U.S. 378, 388 (1989). To establish that a city or government entity is liable for a constitutional violation, a plaintiff must show that a policy, custom, or practice of the city was the "moving force" behind any such alleged constitutional injury. Monell, 436 U.S. at 694; Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). But liability for an improper custom or policy may not be predicated on isolated or sporadic incidents. Hunter v. Cnty. of Sacramento, 652 F.3d

1225, 1233 (9th Cir. 2011) (citing Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (internal citations omitted). To hold a government entity liable under § 1983, a plaintiff must show that the alleged unconstitutional act results from (1) an employee acting pursuant to an official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) the conduct of an employee with final policymaking authority. Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003).

As noted by Defendants, in his response memorandum, Plaintiff failed to respond to the argument for summary judgment on this Count (see Doc. 55 at 7). Further, in his First Amended Complaint, Plaintiff did not allege that Boardman or Lubker were final policymakers, nor did he allege that they were acting pursuant to a longstanding custom or policy (see Doc. 14 at 4). Rather, Plaintiff alleged that they acted contrary to policies and procedures designed to ensure procedural safeguards (id.). On this record, Plaintiff fails to show a genuine issue of material fact that the City failed to train Defendant officers and that the failure to train amounted to deliberate indifference to Plaintiff's constitutional rights. Summary judgment will be granted to Defendants on Count II.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 51).

(2) Defendants' Motion for Summary Judgment (Doc. 51) is **granted in part** and **denied in part** as follows:

    (a) the motion is **granted** as to the claims within Count I alleging failure to give Plaintiff Miranda warnings and lack of probable cause for arrest and search; these claims are dismissed with prejudice.

    (b) the motion is **granted** as to Count II, which alleges failure to train; this Count is dismissed with prejudice.

    (c) the motion is otherwise **denied**.

(3) The City of Phoenix is dismissed as a Defendant.

(4) The remaining claim is the Fourth Amendment claim in Count I alleging that Boardman and Lubker lacked reasonable suspicion to stop and detain Plaintiff.

DATED this 11th day of April, 2013.

_____
Robert C. Broomfield
Senior United States District Judge